```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA


                                    )
TROY PONTON,                        )
                                    )
          Plaintiff                 )
                                    )
     vs.                            )
                                    )
JOAN BAILEY, T. DOUGHERTY, Unit     )    Civil Action No.  02-138J
Manager WHITESAL, and Warden JOHN   )    Magistrate Judge Lisa
McCULLOUGH,                         )    Pupo Lenihan
                                    )
          Defendants                )
                                    )    HEARING OPINION
                                    )
```

## MEMORANDUM OPINION

This prisoner civil rights case has a long and tortured history. Troy Ponton, represented by Angus R. Love, initially filed this case in the United State Court for the Eastern District of Pennsylvania. Ponton v. Bailey, No. 2:02-cv-482-RBS (filed 1/30/2002). Upon stipulation of the parties, the case was transferred to the United States District Court for the Middle District of Pennsylvania. Id. (Doc. No. 3); Ponton v. Bailey, No. 1:02-cv-518 (M.D. Pa. Filed 3/28/02). On April 29, 2002, Plaintiff's counsel stipulated that this case should be transferred to this court. Ponton v. Bailey, No. 1:02-cv-518 (M.D. Pa. Doc. 2), which received the case on May 9, 2002.

On April 15, 2003, Defendants filed an answer to the civil rights complaint. Doc. 10. After several extensions of the period for discovery, an order was entered directing counsel to

file pretrial statements. Doc. 19. Both parties did this in November and December 2005. Docs. 20, 22. Defendants also filed a motion to amend their answer so as to specifically include the affirmative defense of failure to exhaust. Doc. 23. That motion was ultimately granted. Doc. 42. Meanwhile, Defendants filed a motion for summary judgment, Doc. 24, and a brief in support. Doc. 26. In that motion, they raised the failure to exhaust as a defense. Plaintiff filed a brief in opposition, Doc. 29, and evidentiary materials in opposition. Doc. Nos. 30 - 33. Defendants Bailey filed a statement of facts not in dispute. Doc. 37.

The Magistrate Judge previously assigned to this case authored a Report recommending denial of the summary judgment motion, finding that there was a material factual dispute as to whether Plaintiff had filed a March 7, 2000 grievance with the proper first level grievance officer or whether such grievance was fabricated after the fact, when Plaintiff received a response from Chief Grievance Officer Bitner dated April 17, 2000, advising that Plaintiff could not skip the first two levels of grievance review and immediately file a grievance with Bitner. Doc. 42 at 5-7. The Report further recommended that

> [t]he determination whether a prison has exhausted administrative remedies is made by evaluating the adequacy of an inmate's attempts to comply with the prison's administrative regulations governing inmate grievances. It is not a trial issue, rather it is a preliminary question of law to be determined by the

> court. . . . The question whether plaintiff properly
> exhausted his administrative remedies should be heard
> by the trial court before the jury trial on the claim
> of deliberate indifference.

Doc. 42 at 6-7.  No objections were filed to the report and it was adopted as the opinion of the court.  Doc. 44.  On September 19, 2006, an order was entered granting the consent motion of the parties to have this case transferred to the undersigned for all further proceedings.  A telephone conference was held on October 17, 2006, wherein the parties agreed to have a bench trial conducted on the issue of exhaustion.  Doc. 47.  The hearing was conducted on November 9, 2006.  At the beginning of the hearing, the court again asked the parties to state their agreement that the court could decide the issue of exhaustion as a preliminary matter, and not as a question of fact for the jury to decide.  The parties agreed to this.

**Findings of Fact**

1. At the time of initiating this lawsuit, Plaintiff was incarcerated at SCI-Mercer.  Complaint at ¶ 3.

2. At the time of the events giving rise to this suit, Plaintiff was incarcerated at SCI-Houtzdale.  Complaint at ¶¶ 9-31.

3. On March 8, 2000, Plaintiff was transferred to SCI-Chester.

4. At some time during the pendency of these proceedings but

prior to the hearing, Plaintiff finished his sentence and was released from state custody.

5. Adequate exhaustion of administrative remedies is required prior to filing any lawsuit alleging a civil rights violation by an incarcerated person, pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

6. Exhaustion of administrative remedies, within the meaning of the PLRA, is governed in the DOC by Administrative Directive DC-ADM 804.

7. The DC-ADM 804 policy is contained in the DOC Inmate Handbook that is distributed to all inmates, including Mr. Ponton, upon incarceration.

8. The DC-ADM 804 policy is also available for review in the prison law library and upon request.

9. DC-ADM 804 specifies that, in order to be considered to have exhausted administrative remedies, an inmate must pursue a grievance through three specific steps.

10. The first of these steps is known as Initial Review.

11. Pursuant to DC-ADM 804, an inmate must file his grievance to Initial Review within 15 calendar days of the events of which he complains.

12. Within 10 working days of receipt at Initial Review, the Grievance Officer must provide a written response to the inmate.

13. Within 5 calendar days of receipt of the decision from

Initial Review, an inmate must appeal his grievance to the Superintendent.

    14. An inmate "must appeal in this manner prior to seeking Final Review.

    15. As stipulated by the parties, the version of the Administrative Remedies that were in effect at the time that Plaintiff would have been required to exhaust is the version admitted without objection as Plaintiff Ex. A.

    16. Plaintiff alleges that he was assaulted by a fellow prisoner on February 29, 2000.

    17. On March 7, 2000, he requested and completed a grievance form, dated March 7, 2000 addressed to Kathy Emel. [Plaintiff Ex. B].

    18. Mr. Ponton placed the grievance form in the door of C-20 cell in L-5 unit for an officer to pick up and place in the grievance box. This was the customary method of mailing in the restricted housing unit of the institution at that time.

    19. An institutional corrections officer picked up the grievance a short time later.

    20. Ponton did not receive a response from his February 7, 2000 grievance so he filed another grievance on April 6, 2000, also addressed to Kathy Emel. [Defendant Ex. D].

    21. On April 17, 2000 Ponton received a response from Chief Hearing Examiner Bitner stating that he checked with Ms. Emel and

no grievance had been filed by Ponton at Houtzdale. [Plaintiff Ex. C].

22. Not knowing what else to do, Plaintiff decided to begin the grievance process again with the filing of another grievance on May 1, 2000. [Plaintiff Ex. D].

23. Ponton filed a third grievance on May 3, 2000 directed to Emel. [Plaintiff Ex. E].

24. Ponton also filed an Inmate Request to Staff (IRSM) to Warden McCullough complaining about the lack of a reply to the March 7, 20000 grievance. [Plaintiff Ex. E].

25. On May 8, 2000 Ponton received a response from Emel that stated his grievance was rejected as untimely for failure to file within 15 days after the incident in question. [Plaintiff Ex. F].

26. On May 12, 2000 Ponton filed another grievance to Emel noting his filing of a grievance on March 7, 2000 that had not been responded to. [Plaintiff Ex. G].

27. On May 23, 2000 Ponton filed two grievances, one addressed to Emel and a second addressed to the Chief Hearing Examiner.[Plaintiff Ex. H].

28. In the grievance to the Chief Hearing Examiner he indicated that this was an appeal and requested an extension of the 15 day rule that he was accused of ignoring.

29. On May 20, 2000 Ponton received another response from Emel, again stating that his grievance was rejected because he

failed to file within 15 days. [Plaintiff Ex. I].

30. Said response did not address his request for an extension.

31. On June 8, 2000 Ponton filed an appeal to Hearing Examiner Bitner regarding Emel's failure to address his grievances for violating the 15-day rule despite his compliance with such. [Plaintiff Ex. J].

32. Having received no response, Ponton filed an Inmate Request directed to Staff Member to Bitner. [Plaintiff Ex. K].

33. Ponton then filed a grievance with Warden McCullough on July 20, 2000, appealing Emel's failure to accept earlier grievances. [Plaintiff Ex. L].

34. On July 31, 2000 Ponton filed a grievance/appeal to Bitner noting McCullough's and Emel's refusal to accept his timely grievance, denying his request for an extension. [Plaintiff Ex. M].

35. On August 8, 2000 Ponton received a response from Bitner denying his appeal and indicating that he will not address this issue again. [Plaintiff Ex. N].

**Conclusions of Law**

At the time Plaintiff filed this complaint, and at the time of the events he complains of in the complaint and at the time he was required to have exhausted his administrative remedies, Plaintiff was a "prisoner" within the meaning of 42 U.S.C. §

1997e(h).  See e.g., Colby v. Sarpy County, 2006 WL 519396, *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

Plaintiff's complaint is a civil action "brought with respect to prison conditions" within the meaning of 42 U.S.C. § 1997e(a).  Plaintiff was required to exhaust administrative remedies that were available to him. The administrative remedies that were available to Plaintiff during the time at issue are those contained in Plaintiff Ex. A.

That administrative remedy required Plaintiff to file a first level grievance to the grievance coordinator at SCI-Houtzdale within 15 days of February 29, 2000.  Because the Court has found that Plaintiff "mailed" his grievance by placing it in his cell door within the 15 day period, it finds that Plaintiff complied with that requirement.

The second prong of the administrative directive states that an inmate may appeal from the initial review to the Facility Manager. . . "in writing within 5 days from the date of receipt by the inmate of the Initial Review".  [Admin. Dir. 804 IV Procedures (C) Appeal from Direct Review (2)].  The Admin. Dir. 804 is silent on what an inmate should do if he does not get a response within the 10-day period allotted for the written

response to the grievance. Plaintiff in this case did not do nothing, he filed and re-filed his grievance, at various levels, even asking for an extension of time.

Prison inmates have a constitutional right of access to the courts. See, Lewis v. Casey, 518 U.S. 343, 351 (1996). Defendants have not convinced this Court that Plaintiff did not file his grievance in a timely manner. As such, the Court finds that Plaintiff sufficiently pursued his administrative remedies. See, Williams v. First Correctional Medical, 2004 WL 2434307 at 1, n. 4 (D. Del. Oct. 17, 2004). Plaintiff received no response to his initial grievance. The Fifth, Sixth, and Eighth circuits have held that the failure of a prison to respond to a grievance within the time limits in the grievance policy renders the administrative remedy unavailable. Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999); Boyd v. Corrections Corporation of America, 380 F.3d 989, 996 (6th Cir. 2004) *cert. denied* 125 S. Ct. 1639 (2005); Foulk v. Charrier, 262 F.3d 687,698 (8th Cir. 2001). The undersigned has been unable to find a Third Circuit case directly addressing this point, however, the Court believes that the Third Circuit would follow similar reasoning.

## **CONCLUSION**

The Court finds that Mr. Ponton did timely file his

administrative grievance, therefore complying with the exhaustion requirements of the PLRA; and this case may therefore proceed to trial on Plaintiff's claim of deliberate indifference.

_____
Lisa Pupo Lenihan
U.S. Magistrate Judge

Dated: December 4, 2007

cc:   Counsel of Record